IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| DIANNE BAYLIS | : | CIVIL ACTION |
| | : | |
| v. | : | No.: 08-3392 |
| | : | |
| WACHOVIA BANK, N.A., et al. | : | |

**MEMORANDUM AND ORDER**

**Juan R. Sánchez, J.**                                              **November 25, 2008**

      Wachovia Bank, N.A., asks this Court to compel arbitration of Dianne Baylis's dispute with the Bank over impounding two checking accounts in response to a collection instrument issued by Mel S. Harris, Esq., and served by Martin A. Bienstock. Because I find Baylis agreed to the terms of the depositor agreement, including arbitration of disputes, when she continued to use her accounts, I will grant Wachovia's Motion to Compel Arbitration. I further find the Harris entities have waived their defense that this Court lacks personal jurisdiction over Harris, Harris and Associates, and Bienstock. Baylis's case against Harris and Bienstock will proceed in this Court.

**FACTS**

      Dianne Mendez Baylis has two checking accounts in Wachovia Bank. She opened one in 1997 with CoreStates and the other in 2000 after CoreStates had merged with First Union which in turn merged with Wachovia. Baylis banks at a Wachovia branch in Allentown, Pennsylvania. Wachovia retains electronic copies of signatures from signature cards from CoreStates and First Union as signature "clips."

      Baylis identified her signature "clip" from the account she opened in her maiden name in

1

1997. Signature cards in use at CoreStates in 1997 provide "[b]y signing below, the depositor acknowledges receipt of the bank's rules and regulations and agrees to be bound by them . . ." Carney Declaration ¶ 19. A depositor agreement was mailed to Baylis 2003. The depositor agreement also allowed the bank to "change these rules and regulations and add new rules and regulations at any time." Id.

The June 2003 Deposit Agreement included:

> 25. **Arbitration of Disputes/Waiver of Jury Trial and Participation in Class Actions.** If either you or we request, any irresolvable dispute or claim concerning your account or your relationship to us will be decided by binding arbitration under the expedited procedures of the Commercial Financial Disputes Arbitration Rules of the American Arbitration Association (AAA), and Title 9 of the US Code . .

Deposit Agreement ¶ 25.

At the beginning of February 2008, Wachovia notified Baylis the funds in her two bank accounts would be held pending resolution of an attachment issued by Mel S. Harris, Esq., on behalf of an alleged creditor, LR Credit 14, LLC. When Baylis's accounts were frozen, Wachovia refused to honor checks Baylis had issued and her daughter was denied access to her separate funds in one of the accounts. Baylis filed suit in Lehigh County Court of Common Pleas, alleging conversion against all defendants, breach of constructive trust against Wachovia, violation of the Fair Debt Collection Practices Act[1] against Harris and Bienstock, abuse of process against all defendants, fraudulent seizure of funds against all defendants, and defamation against all defendants. Harris and Bienstock removed the case to this Court and filed an answer asserting 27 affirmative defenses, none of which was lack of personal jurisdiction. Wachovia filed a Motion to Compel Arbitration.

---

[1] 15 U.S.C. § 1692 et seq.

## DISCUSSION

The Federal Arbitration Act (FAA), 9 U.S.C. §§ 1-16, "establishes a strong federal policy in favor of the resolution of disputes through arbitration." *Alexander v. Anthony Int'l, L.P.*, 341 F.3d 256, 258 (3d Cir. 2003). Under the FAA, arbitration agreements are "enforceable to the same extent as other contracts," *Id.* Arbitration is "strictly a matter of contract. If a party has not agreed to arbitrate, the courts have no authority to mandate that he do so." *E.I. DuPont de Nemours & Co. v. Rhone Poulenc Fiber & Resin Intermediates, S.A.S.*, 269 F.3d 187, 194 (3d Cir. 2001) (citations omitted).

To determine "whether the parties agreed to arbitrate . . . courts . . . should apply ordinary state-law principles that govern the formation of contracts." *First Options of Chicago, Inc. v. Kaplan*, 514 U.S. 938, 944 (1995); *Morales v. Sun Constructors, Inc.*, 541 F.3d 218, 222 (3d Cir. 2008) (holding "the fact that an offeree cannot read, write, speak, or understand the English language is immaterial to whether an English-language agreement the offeree executes is enforceable").

Baylis argues she did not receive the mailings from Wachovia and, therefore, could not have entered into a contract with Wachovia based on the depositor agreement. She argues in the alternative the depositor agreement is a contract of adhesion and as such should not be enforced.

The contract terms between a bank and its depositors are contained in the signature cards and deposit agreements. *First Fed. Sav. and Loan Ass'n of Hazleton v. Office of State Treasurer, Unclaimed Property Review Committee*, 669 A.2d 914, 916 (Pa. 1995); *In re Johnson*, 355 B.R. 103, 109 (Bankr. C.D. Ill. 2006) (stating the contract is "memorialized by a signature card that is signed by the depositor upon opening the account and a deposit agreement"). Parties to such agreements cannot avoid the terms by stating their claims in tort, rather than in contract. *Acevedo Maldonado*

3

*v. PPG Indus., Inc.*, 514 F.2d 614, 616 (1st Cir. 1975); *Jureczki v. Banc One Tex., N.A.*, 252 F. Supp. 2d 368, 374 (S.D. Tex. 2003) (holding a signature card creates a valid contract to arbitrate). When a depositor signs a signature card without inquiring about bank regulations, they are bound by the contract. *Larrus v. First Nat'l Bank of San Mateo County*, 266 P.2d 143, 147 (Cal. Dist. Ct. App. 1954).

Baylis also argues the Affidavit of Timothy J. Wellence is insufficient to prove she received Wachovia's Deposit Agreement. Wellence's affidavit credibly recites that his company, Mosaic Marketing, Inc., was retained in 2003 to mail notices to bank depositors including those brought in by the First Union merger. Wellence stated he found Baylis's name in the database used to generate the mailing. The contents of the mailing included a letter to depositors and the new Deposit Agreement.

The Federal Rules of Civil Procedure presume a party receives a document three days after it was mailed. Fed. R. Civ. P. 6(e); *Seitzinger v. Reading Hosp. & Med. Ctr.*, 165 F.3d 236, 239 (3d Cir. 1999). The Third Circuit has held production of "a copy of the written notice with the petitioner's correct address" creates a presumption of mailing and receipt. *Santana Gonzalez v. Atty. Gen.*, 506 F.3d 274, 277 (3d Cir. 2007). To counter the presumption, Baylis relies on *Carnathan v. Ohio National Life Insurance Co.*, No. 06-999, 2008 WL 2578919, at *5 (M.D. Pa. June 26, 2008), which held the plaintiff in that case had offered sufficient evidence to overcome the presumption of receipt when he detailed his business's handling of incoming mail and invoices. The *Carnathan* court found sufficient evidence to deny summary judgment. *Id.*

At oral argument, Baylis argued the *Carnathan* court did not find the defendant's "evidence of business custom . . . sufficient to establish the fact of mailing." *Id.* The *Carnathan* court found,

4

to the contrary, the plaintiff had entered sufficient evidence to overcome the presumption created by the defendant's business custom. *Id.* The court did not rely on the defendant's elaborate procedures to prove mailing, but on plaintiff's procedures. *Id.* The plaintiff testified to who collected the mail, who opened the mail, what her procedures were for handling bills and invoices, and who paid the bills. *Id.* In this case, Baylis at her deposition offered the contents of her file regarding banking matters, which did not include the 2003 Deposit Agreement. I distinguish this case from *Carnathan* both by the quantum of evidence offered to rebut the presumption and by the rights at stake. In *Carnathan*, the court found only the plaintiff had offered sufficient evidence to preserve the issue for trial. *Id.* If the *Carnathan* court had granted summary judgment, the plaintiff would have lost a disability policy for which he had diligently paid for 13 years. *Id.* at *1. In this case, Baylis has offered less evidence of non-receipt to overcome the presumption and she retains all of her rights to be made whole in arbitration. For that reason, I find Baylis received the 2003 mailing of the depositor agreement including Paragraph 25 compelling arbitration.

After receiving the depositor agreement, Baylis continued to use her account. The depositor agreement provides specifically, "[y]ou can terminate this Agreement at any time by notifying us in writing and by no longer using your account." Deposit Agreement ¶ 32. By continuing to use her account, Baylis accepted the terms of the contract contained in the 2003 depositor agreement.

In the alternative, Baylis argues the depositor agreement is a contract of adhesion by which she should not be bound. A contract is "not unconscionable merely because the parties to it are unequal in bargaining position." *Alexander v. Anthony Int'l, L.P.*, 341 F.3d 256, 265 (3d Cir. 2003). The dominant party must use its position to impose "terms that unreasonably favor one party to which the disfavored party does not truly assent." *Id.* The Third Circuit held an arbitration clause

5

is not unconscionable, even in a contract of adhesion, because "plaintiffs who sign valid arbitration agreements . . . retain the full range of . . . substantive rights." *Gay v. CreditInform*, 511 F.3d 369, 391-92 (3d Cir. 2007) (holding a depositor to the terms incorporated by reference on a signature card). A consumer who objects to the terms of a contract of adhesion "certainly could have decided to forego obtaining [the bank's] services." *Id.* at 391 n.15. Baylis's contract with Wachovia is not unconscionable and she could have terminated her agreement with Wachovia had she objected to the arbitration clause.

Because I find Baylis received the depositor agreement and entered into the contract by continuing to use her account, I conclude Baylis agreed to arbitrate any dispute with Wachovia. I will grant Wachovia's Motion to Compel Arbitration.

Harris and Bienstock's belated assertion of the defense of lack of personal jurisdiction will be denied. Federal Rule of Civil Procedure 12(h)(1)(B) unequivocally states "[a] party waives any defense listed in Rule 12(b)(2)-(5) by . . . failing to either . . . make it by motion under this rule or . . . include it in a responsive pleading." Fed. R. Civ. P. 12(h)(1)(B). The defense of lack of personal jurisdiction is listed at Rule 12(b)(2).

Defendants Harris and Bienstock argue their boilerplate challenge to the Court's subject-matter jurisdiction in their Answer to the Complaint should serve as a blanket challenge to the Court's jurisdiction sufficient to prevent a finding of waiver. Because subject-matter jurisdiction and personal jurisdiction arise from separate branches of the jurisprudential tree, I find Harris's and Bienstock's challenge to personal jurisdiction is not included in their challenge to subject-matter jurisdiction.

Subject-matter jurisdiction and personal jurisdiction are separate inquiries. *Malaysia Int'l*

6

*Shipping Corp. v. Sinochem Int'l Co.*, 436 F.3d 349, 367 (3d Cir. 2006), *rev'd on other grounds*, *Sinochem Int'l Co. v. Malaysia Int'l Shipping Corp.*, 549 U.S. 422 (2007). Because federal courts are courts of limited jurisdiction, subject-matter jurisdiction is a statutory and constitutional restriction on the power of the Court. *See* U.S. Const. art. III, § 1. Personal jurisdiction arises from the Due Process Clause and protects an individual liberty interest. *Ins. Corp. of Ir., Ltd. v. Compagnie des Bauxites de Guinee*, 456 U.S. 694, 702 (1982). Waiver of personal jurisdiction is based on the principle "the individual can subject himself to powers from which he may otherwise be protected." *Id.* at 703 n.10.

Personal jurisdiction may be conferred by consent of the parties, expressly or by failure to object. *Petrowski v. Hawkeye Security Ins. Co.*, 350 U.S. 495, 491 (1956); *see also In re Tex. E. Transmission Corp. PCB Contamination Ins. Coverage Litig.*, 15 F.3d 1230, 1236 (3d Cir. 1994) (holding "a party is deemed to have consented to personal jurisdiction if the party actually litigates the underlying merits or demonstrates a willingness to engage in extensive litigation in the forum"). Unlike subject-matter jurisdiction, which may be raised by any party or court at any time, parties must affirmatively raise a personal jurisdiction defense in a timely manner or it will be deemed waived. *EF Operating Corp. v. American Bldgs.*, 993 F.2d 1046, 1048 (3d Cir. 1993) citing *Myers v. Am. Dental Ass'n*, 695 F.2d 716, 744 (3d Cir.1982)); *see also Zelson v. Thomforde*, 412 F.2d 56, 58 (3d Cir. 1969) (holding objections to personal jurisdiction are waived unless timely asserted by motion or answer).

Because Harris and Bienstock removed this case from state court and filed an answer before asserting lack of personal jurisdiction, they cannot now assert lack of personal jurisdiction. Because Baylis's claims against Harris and Bienstock are independent and can be resolved separately, there

7

is no need to stay the proceeding against Harris and Bienstock until the arbitral issue is resolved. *See Subway Equip. Leasing Corp. v. Forte*, 169 F.3d 324, 329 (5th Cir.1999) (holding a stay is required only when the "issues presented in the litigation are the subject of an arbitration agreement"). An appropriate order follows.

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| DIANE BAYLIS | : | CIVIL ACTION |
| | : | |
| v. | : | No.: 08-3392 |
| | : | |
| WACHOVIA BANK, N.A., et al. | : | |

### ORDER

And now this 25th day of November, 2008, Defendant Wachovia Bank's Motion to Compel Arbitration (Document 9) is GRANTED and its Motion for an Extension of Time to Answer (Document 10) is DISMISSED as moot. Defendants Harris's and Bienstock's Motion to Dismiss (Document 18) is DENIED.

It is further ORDERED the schedule in the above-captioned matter is as follows:

- Discovery deadline is January 30, 2009;

- Plaintiff's expert report is due February 13, 2009;

- Defendant's expert report is February 27, 2009;[2]

- Dispositive motions are due March 13, 2009;

- Responses to dispositive motions are due March 27, 2009;

- Motions in limine are due April 24, 2009;

- Responses to motions in limine are due May 1, 2009;

- Plaintiff's pre-trial memorandum is due May 6, 2009;

- Defendant's pre-trial memorandum is due May 6, 2009;

---

[2] Any deposition of an expert under Federal Rule of Civil Procedure 26(b)(4)(A) must be conducted before the deadline for submission of dispositive motions.

9

- Joint requested points for charge, joint proposed verdict slip, and voir dire questions, as explained in the Honorable Juan R. Sánchez's on-line procedures, are due May 6, 2009;

- Final pre-trial conference is May 8, 2009 at 9:30 a.m. in Courtroom TBA;

- Joint exhibit binder is to be submitted to chambers no later than 4:30 p.m. the day prior to trial;

- This matter is in the May 11, 2009 trial pool.

- Counsel are referred to Judge Sánchez's operating procedures for further information: http://www.pacd.uscourts.gov/documents/procedures/sanpol.pdf

BY THE COURT:

_____
Juan R. Sánchez,                J.